*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

### UNITED STATES
Appellee/Cross-Appellant

**v.**

### Kevin Gay, Staff Sergeant
United States Air Force, Appellant/Cross-Appellee

### Nos. 15-0742 & 15-0750
Crim. App. No. 38525

Argued February 23, 2016—Decided May 11, 2016

Military Judge: Joshua E. Kastenberg

For Appellee/Cross-Appellant: *Major Matthew J. Neil* (argued); *Colonel Katherine E. Oler* and *Gerald R. Bruce*, Esq. (on brief).

For Appellant/Cross-Appellee: *Captain Lauren A. Shure* (argued); *Brian L. Mizer*, Esq.

Chief Judge ERDMANN delivered the opinion of the court, in which Judges STUCKY, RYAN, and OHLSON, and Senior Judge COX, joined.

————————

Chief Judge ERDMANN delivered the opinion of the court.

Contrary to his pleas, Staff Sergeant Kevin Gay was convicted at a general court-martial of two specifications of larceny, two specifications of wrongful appropriation, one specification of wire fraud, and one specification of identity theft, in violation of Articles 121 and 134, UCMJ, 10 U.S.C. §§ 921, 934 (2012). Gay was sentenced to a bad-conduct discharge, confinement for six months, forfeiture of all pay and allowances, and reduction to paygrade E-3. The convening authority reduced the period of confinement adjudged by nine days and approved the balance of the sentence. The United States Air Force Court of Criminal Appeals (CCA) affirmed the guilty findings but reassessed the sentence and

approved "a bad conduct discharge, confinement for 3 months and reduction to E-3." *United States v. Gay*, 74 M.J. 736, 745 (A.F. Ct. Crim. App. 2015).

Under Article 66(c), UCMJ, a Court of Criminal Appeals "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." 10 U.S.C. § 866(c). The Judge Advocate General of the Air Force certified the following issue to this court:

> WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS (AFCCA) ABUSED ITS DISCRETION AND COMMITTED LEGAL ERROR BY REACHING ITS DECISION THAT ARTICLE 66, UCMJ, GRANTS IT THE AUTHORITY TO GRANT SENTENCE APPROPRIATENESS RELIEF FOR POST-TRIAL CONFINEMENT CONDITIONS EVEN THOUGH THERE WAS NO VIOLATION OF THE EIGHTH AMENDMENT OR ARTICLE 55, UCMJ, IN DIRECT CONTRAVENTION OF THIS COURT'S BINDING PRECEDENT.[1]

We answer the certified issue in the negative and hold that the CCA did not abuse its discretion in granting sentence appropriateness relief for the post-trial confinement conditions in this case.[2]

## BACKGROUND

On May 30, 2013, following his conviction, Gay was confined at Monmouth County Correctional Institution (MCCI), a civilian confinement facility, where he was assigned to a "pod" in close proximity to a foreign national for nine days and later placed in solitary confinement. In his clemency

---

[1] U.S. Const. amend. VIII.

[2] We also specified an issue questioning whether the CCA erred in failing to remand the case for a *United States v. DuBay*, 17 C.M.A. 147, 37 C.M.R. 411 (1967), fact-finding hearing under the criteria of *United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997). As both parties agree that the CCA did not err in its *Ginn* analysis, we need not further address that issue.

submission to the convening authority, Gay referenced an Article 138, UCMJ, 10 U.S.C. § 938 (2012), complaint he had filed earlier in which he had requested confinement credit for being housed with a foreign national in violation of Article 12, UCMJ, 10 U.S.C. § 812 (2012).[3] Gay also requested additional confinement credit "for being unnecessarily placed in maximum security solitary confinement," which he alleged amounted to cruel and unusual punishment in violation of Article 55, UCMJ, 10 U.S.C. § 855 (2012). The convening authority awarded Gay nine days of confinement credit for the Article 12 violation, but no credit for the alleged violation of Article 55.

As part of his clemency submission Gay submitted a signed affidavit which averred, in relevant part:

> On 7 June 2013, I was moved into solitary confinement, which segregated me from the foreign national in Pod F-1 and all other inmates. Upon entering solitary, I was stripped, searched, placed in shackles, put on 23 hour per day lockdown, denied phone calls and visitation and forced to use an open caged shower and bathroom. I was released from solitary on 13 June 2013, after [my squadron's superintendant] … came to check on my living arrangements and discovered what had happened. I was immediately removed from solitary per their request to the MCCI staff. I am now presently housed in Pod F-2 and awaiting transfer to a military confinement facility.

Gay's squadron superintendant, Senior Master Sergeant (SMSgt) Yvette Gerrard, also submitted an affidavit, which averred in relevant part:

> 1. I visited … Gay at [MCCI] on 13 June 2013, and I was alarmed to find that [he] was in solitary confinement and brought out in handcuffs and that he had been in that condition since 7 June 2013…. Upon learning of … Gay's living conditions, we im-

---

[3] Article 12, UCMJ, provides, "No member of the armed forces may be placed in confinement in immediate association with enemy prisoners or other foreign nationals not members of the armed forces." *See also United States v. McPherson*, 73 M.J. 393, 399-400 (C.A.A.F. 2014) (Baker, C.J., concurring in part and dissenting in part).

mediately complained to the MCCI staff. [The staff] saw to it that … Gay was immediately released from solitary confinement and placed in a Pod alongside American Citizens….

2. I learned from the staff at MCCI that MCCI has a procedure in place to ensure military members are not placed in confinement alongside foreign nationals or enemy prisoners of war. However, according to MCCI staff they were verbally instructed by personnel at Joint Base McGuire-Dix-Lakehurst, New Jersey, without explanation, to place … Gay in to [sic] corrective or protective custody, … which they did without question.

Before the Air Force Court of Criminal Appeals, Gay argued that the government violated the Eighth Amendment and Article 55 by subjecting him to cruel and unusual punishment by placing him in solitary confinement. *Gay*, 74 M.J. at 738, 740. Following a comprehensive analysis of Gay's Eighth Amendment and Article 55 claims, the CCA concluded that the conditions alleged by Gay did not rise to a violation of either provision. *Gay*, 74 M.J. at 742-43. However, the court noted that the Eighth Amendment and Article 55 determination did not end its analysis:

Under our broad Article 66(c), UCMJ, authority, we retain responsibility in each case we review to determine whether the adjudged and approved sentence is appropriate. Under Article 66(c), UCMJ, our sentence appropriateness authority is to be based on our review of the "entire record," which necessarily includes the appellant's allegation of the conditions of his post-trial confinement. While we may not engage in acts of clemency, we hold that we may consider post-trial confinement conditions as part of our overall sentence appropriateness determination, even where those allegations do not rise to the level of an Eight Amendment or Article 55, UCMJ, violation.

*Gay*, 74 M.J. at 743 (citation omitted).

The CCA held that under the facts of this case, sentence appropriateness relief was warranted even though Gay's post-trial confinement conditions did not constitute an Eighth Amendment or Article 55 violation. *Id.* The CCA ex-

plained that this relief was warranted for the following reasons:

> 1. No valid reason [was] offered for placing [Gay] in solitary confinement….

> 2. If [Gay] was placed in solitary confinement solely to prevent him from being housed with a foreign national, th[at] d[id] not constitute an acceptable reason for placing [him there].

> 3. The unrebutted assertion in [SMSgt Gerrard's] affidavit indicate[d] that some Air Force official directed [Gay] to be placed in solitary confinement.

> 4. When unit leadership complained to MCCI officials, [Gay] was easily transferred to another pod that did not contain foreign nationals.

*Id.* (citation omitted).

## ARGUMENTS

The government argues the CCA's decision to award sentence relief absent an Eighth Amendment or Article 55 violation constitutes an abuse of discretion because it directly contravenes this court's precedent. According to the government, *United States v. Fagan*, 59 M.J. 238 (C.A.A.F. 2004), and *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002), establish that the "broad power to moot claims of prejudice," as announced in *United States v. Wheelus*, 49 M.J. 283, 288 (C.A.A.F. 1998), arises only after the CCA first acknowledges a legal error or deficiency in the post-trial process. Thus, the government contends an Eighth Amendment or Article 55 violation is a prerequisite to granting sentence appropriateness relief for post-conviction confinement conditions.

Gay counters that the CCA's decision was neither an abuse of discretion nor a misapplication of precedent. According to Gay, *Tardif* noted that the Courts of Criminal Appeals have Article 66(c) authority to tailor appropriate remedies to the circumstances of the case. Gay further contends the government's reliance on *Fagan* is misplaced. Specifically, Gay asserts *Fagan* did not hold that the CCAs are prohibited from granting sentence appropriateness relief arising from complaints of post-trial confinement conditions. Rather, Gay interprets *Fagan* to mean that the CCAs cannot grant sentence relief prior to employing the factors an-

nounced in *United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997), to resolve factual disputes between conflicting affidavits.

## DISCUSSION

We review a Court of Criminal Appeals' sentence appropriateness determination for abuse of discretion. *United States v. Nerad*, 69 M.J. 138, 142 (C.A.A.F. 2010). This case concerns the threshold required for Article 66(c) sentence appropriateness relief where an appellant has challenged post-conviction confinement conditions. The scope and meaning of Article 66(c) is a matter of statutory interpretation, which, as a question of law, is reviewed de novo. *United States v. Schloff*, 74 M.J. 312, 313 (C.A.A.F. 2015), *cert. denied*, 136 S. Ct. 915 (2016). Relying primarily on our opinion in *Fagan*, *supra*, the government argues that there must be a constitutional or statutory violation before a CCA can exercise its Article 66(c) sentence appropriateness authority for post-trial confinement conditions.

In *Fagan,* the appellant began serving his confinement at the United States Army Confinement Facility, Europe (USACFE). 59 M.J. at 240. On appeal to the CCA, Fagan alleged that while he was confined at USACFE he was subjected to cruel and unusual punishment, in violation of the Eighth Amendment and Article 55. *Id.* In support of his CCA appeal, Fagan submitted his own affidavit detailing the alleged abuse and affidavits from eight other inmates who had been confined at USACFE prior to Fagan's arrival. *Id.* The government submitted affidavits from USACFE personnel denying the allegations. *Id.*

The CCA determined the affidavits submitted by the parties were in conflict and that the criteria set forth in *Ginn*, 47 M.J. at 236, would require additional fact-finding. *Fagan*, 59 M.J. at 240. However, rather than remanding the matter for a *DuBay* fact-finding hearing, the CCA decided it could "moot the issue" by granting sentence relief under *Wheelus,* 49 M.J. at 283 (internal quotation marks omitted), without resolving the underlying factual conflict. The CCA subsequently reassessed the sentence by approving nineteen months of the confinement portion of the sentence, rather than the twenty months approved by the convening authori-

ty. *United States v. Fagan,* 58 M.J. 534, 539 (A. Ct. Crim. App. 2003).

On appeal, this court considered whether the CCA erred when it failed to order a *DuBay* hearing, and whether it had authority to grant Article 66(c) relief in lieu of a *DuBay* hearing. We held that "[t]he *Ginn* framework requires a *DuBay* hearing … if the opposing affidavits raise a fact dispute that is 'material' to the resolution of the post-trial claim and the claim cannot be otherwise resolved through application of the five *Ginn* factors." *Fagan,* 59 M.J. at 243 (citations omitted).

We acknowledged that, in *Wheelus*, we had referred to the CCAs' "broad power to moot claims of prejudice" by exercising their Article 66(c) authority. *Fagan,* 59 M.J. at 244 (internal quotation marks omitted); *see also Wheelus,* 49 M.J. at 288. However, we clarified in *Fagan* that "[i]t is not a 'broad power to moot claims of prejudice' in the absence of an acknowledged legal error or deficiency, nor is it a mechanism to 'moot claims' as an alternative to ascertaining whether a legal error or deficiency exists in the first place." *Fagan,* 59 M.J. at 244. We concluded by holding: "However 'broad' it may be, the 'power' referred to in *Wheelus* does not vest the Court of Criminal Appeals with authority to eliminate [the fact-finding] determination and move directly to granting sentence relief to Fagan." *Id.*

However, in discussing these issues, we explained, "[i]n terms of Fagan's claim, he may be entitled to relief if he did in fact suffer a violation of the rights guaranteed him by the Eight Amendment and Article 55." *Id.* Accordingly, this language, relied on here by the government, was simply a recognition of Fagan's underlying claims in that case. We did not address the issue raised by the government in this case – whether an Eighth Amendment or Article 55 violation is a prerequisite to Article 66(c) sentence appropriateness relief for post-trial confinement conditions. The government's reliance on *Fagan* is therefore misplaced.

The language of Article 66(c) states that a CCA "may" approve only that part of a sentence that it finds "should be approved." 10 U.S.C. § 866(c) (2012). The statute clearly establishes a discretionary standard for sentence appropriate-

ness relief awarded by the Courts of Criminal Appeals. *See, e.g.*, *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999) (recognizing that "the sentence review function of the Courts of Criminal Appeals is highly discretionary"); *see also United States v. Atchak*, 75 M.J. 193, 195 (C.A.A.F. 2016) (explaining with regard to the discretionary authority of the CCAs under Article 66(d) that, "[t]he statute says … a CCA *may* order a rehearing; it does not say that it must. 'May' is a permissive term, *see United States v. Moss*, 73 M.J. 64, 68 (C.A.A.F. 2014), and indicates that Congress intended to provide the CCAs with discretion on this point").

While the government argues there is no standard for the CCAs to apply in their discretionary analysis, both *Wheelus* and *Fagan* require a legal error or deficiency. However, we have never held, as the government argues, that the legal error or deficiency must rise to the level of an Eighth Amendment or Article 55 violation in post-trial confinement conditions cases. Indeed, distinguishing Article 66(c) from the constraints Article 59(a), UCMJ, places on the authority of the CCAs,[4] we have interpreted the former as requiring that the CCA be satisfied that the findings and sentence are: (1) "correct in law" and (2) "correct in fact," and (3) that it "determine[], on the basis of the entire record, [the findings and sentence] *should be approved*." *Tardif,* 57 M.J. at 223-24 (emphasis added) (internal quotation marks omitted) (citation omitted).

In this case, the CCA found that the sentence was inappropriate in part because Gay was placed in solitary confinement through no fault of his own.[5] The CCA supported its determination by acknowledging: (1) there was no valid

---

[4] Under Article 59(a), "[a] finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." 10 U.S.C. § 859(a) (2012).

[5] The CCA concluded Gay's sentence was inappropriately severe "both on the basis of his post-trial confinement conditions and the government's delay in forwarding the record of trial for [its] review." *Gay*, 74 M.J. at 745. As neither party has addressed whether the post-trial processing delay would provide a basis for awarding sentence appropriateness relief, we restrict our analysis to the post-trial confinement conditions.

reason for placing Gay in solitary confinement; (2) avoiding additional Article 12 violations was not an acceptable reason to place him in solitary confinement, *see McPherson*, 73 M.J. at 399-400 (Baker, C.J., concurring in part and dissenting in part) (disapproving of the possibility that servicemembers might be placed in solitary confinement regardless of their behavior to avoid giving rise to relief under Article 12); (3) the assertion that an Air Force official directed that Gay be placed in solitary was unrebutted; and, (4) Gay was easily transferred to a pod that did not house foreign nationals once his unit complained of his treatment. *Gay*, 74 M.J. at 743.

These reasons evidence a legal deficiency in the post-trial confinement conditions to which Gay was subjected. Specifically, the faulty post-trial process in this case, which was sparked by a legal error, namely a violation of Article 12, contravened established standards for when solitary confinement is warranted. As the CCA explained, its conclusion was based, in part, on the fact that solitary confinement was imposed for an improper purpose – Gay did not engage in behavior that would have warranted solitary placement; the conditions of confinement were more severe than what he should have experienced; and the confinement was ordered by an Air Force official to avoid Article 12 violations where an alternative solution was available. While the CCA found that the conditions did not rise to the level of an Eighth Amendment or Article 55 violation, those conditions provide support for the exercise of the CCA's discretionary sentence appropriateness authority.[6]

---

[6] Alternatively, the CCA could have also found legal error warranting the application of its sentence appropriateness authority through Article 58(a), UCMJ, 10 U.S.C. § 858(a) (2012), which establishes that "[p]ersons … confined in a penal or correctional institution not under the control of one of the armed forces are subject to the same discipline and treatment as persons confined or committed by the courts of the United States or of the State, District of Columbia, or place in which the institution is situated." The actions of Air Force officials in response to an alleged Article 12, UCMJ, issue led to Gay being inappropriately placed in solitary confinement through a process that would not have applied to MCCI's State prisoner population. Therefore, the CCA could have

In reaching this conclusion, we do not recognize unlimited authority of the Courts of Criminal Appeals to grant sentence appropriateness relief for any conditions of post-trial confinement of which they disapprove. Rather, we hold that the Air Force Court of Criminal Appeals' decision to grant sentence appropriateness relief in this case was based on a legal deficiency in the post-trial process and, thus, was clearly authorized by Article 66(c).

## DECISION

The certified question is answered in the negative and the opinion of the United States Air Force Court of Criminal Appeals is affirmed. The CCA did not abuse its discretion when it exercised its Article 66(c) sentence reassessment authority for post-trial confinement conditions despite its conclusion that the conditions did not rise to a violation of the Eighth Amendment or Article 55.

---

found legal error based on Article 58(a) because Gay was not "subject to the same discipline and treatment" as State prisoners.